Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIM CUSTER,<br><br>    Plaintiff,<br><br>v.<br><br>ANAPLAN, INC., FRANK CALDERONI, ROBERT E. BEAUCHAMP, SUSAN L. BOSTROM, DAVID F. CONTE, ALLAN LEINWAND, BROOKE E. MAJOR-REID, SANDESH PATNAM, SURESH VASUDEVAN, and YVONNE WASSENAAR,<br><br>    Defendants. | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tim Custer ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against Anaplan, Inc. ("Anaplan" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and

1

78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Anaplan by Thoma Bravo, L.P. ("Thoma Bravo").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Anaplan common stock.

7. Defendant Anaplan provides a cloud-based connected planning platform to connect organizations and people in the Americas, Europe, the Middle East, Africa, and the Asia

Pacific. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "PLAN."

8. Defendant Frank Calderoni ("Calderoni") is Chief Executive Officer and Chairman of the Board of the Company.

9. Defendant Robert E. Beauchamp ("Beauchamp") is a director of the Company.

10. Defendant Susan L. Bostrom ("Bostrom") is a director of the Company.

11. Defendant David F. Conte ("Conte") is a director of the Company.

12. Defendant Allan Leinwand ("Leinwand") is a director of the Company.

13. Defendant Brooke E. Major-Reid ("Major-Reid") is a director of the Company.

14. Defendant Sandesh Patnam ("Patnam") is a director of the Company.

15. Defendant Suresh Vasudevan ("Vasudevan") is a director of the Company.

16. Defendant Yvonne Wassenaar ("Wassenaar") is a director of the Company.

17. Defendants Calderoni, Beauchamp, Bostrom, Conte, Leinwand, Major-Reid, Patnam, Vasudevan, and Wassenaar are collectively referred to herein as the "Individual Defendants."

18. Defendants Anaplan and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On March 20, 2022, Anaplan announced that it had entered into a definitive agreement to be acquired by Thoma Bravo for $66.00 per share. The press release announcing the Proposed Transaction states, in pertinent part:

**Anaplan to be Acquired by Thoma Bravo for $10.7 Billion**

*Anaplan stockholders to receive $66.00 per share in cash*

*Anaplan to become a privately held company upon completion of the transaction*

March 20, 2022 09:30 PM Eastern Daylight Time

SAN FRANCISCO--(BUSINESS WIRE)--Anaplan, Inc. ("Anaplan" or the "Company") (NYSE: PLAN), provider of a leading cloud-native platform for orchestrating business performance, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm, for $66.00 per share in an all-cash transaction valued at approximately $10.7 billion. The offer represents a premium of approximately 46% to the volume weighted average price of Anaplan stock for the five days ending March 18, 2022. Upon completion of the transaction, Anaplan will become a privately held company.

\*   \*   \*

**Transaction Details**

The transaction, which was unanimously approved by the Anaplan Board of Directors, is expected to close in the first half of 2022 subject to customary closing conditions, including approval by Anaplan stockholders and regulatory approval. Upon completion of the transaction, Anaplan's common stock will no longer be listed on the New York Stock Exchange.

**Advisors**

Goldman Sachs & Co. LLC and Qatalyst Partners are acting as financial advisors and Gunderson Dettmer Stough Villeneuve Franklin & Hachigian, LLP and Skadden, Arps, Slate, Meagher & Flom LLP are serving as legal advisors to Anaplan. Kirkland and Ellis LLP is serving as legal counsel to Thoma Bravo. Financing for the transaction is being provided by Owl Rock Capital, Blackstone Credit, Golub Capital and Apollo Global Management through their respective managed funds.

**About Anaplan**

Anaplan (NYSE: PLAN) is a transformative way to see, plan, and run your business. Using our proprietary Hyperblock® technology, Anaplan lets you contextualize real-time performance, and forecast future outcomes for faster, confident decisions. Anaplan enables connected strategy and planning across your enterprise to move your business forward. Based in San Francisco, Anaplan has

over 175 partners and more than 1,900 customers worldwide. To learn more, visit Anaplan.com.

**About Thoma Bravo**

Thoma Bravo is one of the largest private equity firms in the world, with more than $103 billion in assets under management as of December 31, 2021. The firm invests in growth-oriented, innovative companies operating in the software and technology sectors. Leveraging the firm's deep sector expertise and proven strategic and operational capabilities, Thoma Bravo collaborates with its portfolio companies to implement operating best practices, drive growth initiatives and make accretive acquisitions intended to accelerate revenue and earnings. Over the past 20 years, the firm has acquired or invested in more than 375 companies representing over $190 billion in enterprise value. The firm has offices in Chicago, Miami and San Francisco. For more information, visit www.thomabravo.com.

20. On May 2, 2022, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

21. The Proxy Statement, which recommends that Anaplan shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Anaplan's financial projections; (ii) the financial analyses performed by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman") and Qatalyst Partners LP ("Qatalyst"), in connection with their fairness opinions; (iii) potential conflicts of interest involving Qatalyst; and (iv) potential conflicts of interest involving Company insiders.

22. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board of Directors and Reasons for the Merger; (ii) Opinions of Anaplan's Financial Advisors; and (iii) Certain Financial Projections.

23. Unless and until the material misstatements and omissions (referenced below) are

remedied before the June 9, 2022 shareholder vote on the Proposed Transaction, Anaplan shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Anaplan's Financial Projections**

24. The Proxy Statement omits material information concerning Anaplan's financial projections.

25. With respect to Anaplan's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections; and (2) a reconciliation of all non-GAAP to GAAP metrics.

26. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Anaplan and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

27. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable

method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

28. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning the Financial Advisors' Analyses

29. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman and Qatalyst.

30. The valuation methods, underlying assumptions, and key inputs used by Goldman and Qatalyst in rendering their purported fairness opinions must be fairly disclosed to the Company's shareholders. The description of the financial advisors' fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses.

31. Without the information described below, the Company's shareholders are unable to fully understand Goldman's and Qatalyst's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 3, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

A. *Goldman's Analyses*

32.     The Proxy Statement fails to disclose the following concerning Goldman's "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the discount rates and multiples used in the analysis; (2) the terminal values for Anaplan; (3) the net debt of Anaplan as of January 31, 2022; (4) the net present value of cash tax savings from federal net operating losses; and (5) the number of fully diluted outstanding shares of Anaplan.

33.     The Proxy Statement fails to disclose the following concerning Goldman's "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the multiples and discount rates used in the analysis; (2) the amount of Anaplan's forecasted net debt as of January 31, 2023 to 2025; and (3) the number of projected fully diluted shares of Anaplan common stock as of January 31 for each of the years of 2023 to 2025, respectively.

34.     With respect to Goldman's "*Selected Transactions Analysis*" and "*Selected Public Company Comparables*" analysis, the Proxy Statement fails to disclose the individual financial metrics of each transaction and company Goldman observed in its analyses.

35.     With respect to Goldman's "*Premia Paid Analysis*," the Proxy Statement fails to disclose the transactions observed and the premiums paid therein.

B. *Qatalyst's Analyses*

36.     The Proxy Statement fails to disclose the following concerning Qatalyst's "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the discount rates and multiples used in the analysis; (2) the terminal value of Anaplan; (3) the implied net present value of estimated federal tax savings due to the Company's net

8

operating losses for the fiscal years 2032 and beyond; (4) the value of Anaplan's finance leases, as of January 31, 2022; and (5) the number of fully diluted shares of Anaplan common stock outstanding as of March 18, 2022.

37. With respect to Qatalyst's "*Illustrative Selected Companies Analysis*" and "*Illustrative Selected Transactions Analysis,*" the Proxy Statement fails to disclose the individual financial metrics of each company and transaction Qatalyst observed in its analyses.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Qatalyst

38. The Proxy Statement omits material information concerning potential conflicts of interest involving Qatalyst.

39. The Proxy Statement fails to disclose the timing and nature of the past services that Qatalyst and/or its affiliates provided to Thoma Bravo and/or its affiliates, including the amount of compensation Qatalyst received or expects to receive for providing each service within the past two years of the date of its fairness opinion.

40. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

41. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

42. The Proxy Statement omits material information concerning potential conflicts of

9

interest involving Company insiders.

43. The Proxy Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

44. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

48. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the

mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

49. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

50. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

54. Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

56. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions

as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 3, 2022                       Respectfully submitted,

                                                     **HALPER SADEH LLP**

                                                      By: /s/ Daniel Sadeh
                                                      Daniel Sadeh, Esq.
                                                      Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                      667 Madison Avenue, 5th Floor
                                                      New York, NY 10065

Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
      zhalper@halpersadeh.com

*Counsel for Plaintiff*